UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DOPPLICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:22CV1208 JAR |
| ORTHECO LLC, *et al.,* | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss [ECF No. 14]. Plaintiff filed her response in opposition. The Motion is fully briefed and ready for disposition. For the reasons set forth below, Defendants' Motion will be denied.

**Background and Facts**

On October 4, 2022, Plaintiff Stephanie Dopplick filed this action under the Missouri Minimum Wage Law ("MMWL") and Fair Labor Standards Act ("FSLA") in the Circuit Court of St. Louis County, Missouri, against Defendants Ortheco LLC and Romel Bhanti relating to unpaid wages and unlawful termination.

Defendants subsequently removed this action to federal court pursuant to the Court's original jurisdiction over Plaintiff's FSLA claims and supplemental jurisdiction over her remaining claims alleged under Missouri law. *See* 28 U.S.C. §§ 1331 and 1367(a).

Defendants now moves to dismiss Plaintiff's First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's First Amended Complaint [ECF No. 11], in pertinent part, alleges[1] the following:

In November 2019, Plaintiff applied for the position of Amputee Success Manager with Defendant Ortheco LLC at its Union, Missouri location. Defendant Romel Bhanti is the owner of Defendant Ortheco, which is a business providing clinical services and devices by licensed clinicians certified in prosthetics and orthotics. After an interview, Defendant Bhanti hired Plaintiff for the position at a yearly salary of $40,000 with the opportunity for bonuses and advancement. Plaintiff's job duties were clerical tasks, and she was scheduled to work 42.5 hours per week, specifically 8:30 A.M. to 5:30 P.M. Monday through Friday. Although she did get a meal break each workday, Plaintiff was expected to be available at all times during her scheduled shift and routinely worked through her meal breaks to fulfill her work duties. She was never disciplined for being tardy, absent, or performing unauthorized work during her scheduled shift. She never received overtime pay for weeks when she worked in excess of forty hours.

On November 4, 2019, Defendant Bhanti sent an email to Plaintiff that stated:

> …I had mentioned since we do not have an employee incentive program in place yet, I wanted to formally incentivize your hard work in growing our company. I will increase your yearly salary to $55,000 per year if we bill (Allowable) $60,000 three consecutive months. We will negotiate future incentives after we have crossed this threshold.

Plaintiff believed this email was a binding and enforceable promise and would require more work beyond her assigned work duties. Because of this promise, Plaintiff continued to work hard, doing more than her required clerical duties, and she did not seek other more

---

[1] Unless otherwise noted, all facts in this section are alleged in Plaintiff's First Amended Complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

lucrative employment opportunities because she wanted to secure the promised annual salary increase.

In November 2020, December 2020, and January 2021, Defendants billed more than $60,000 each month through the continued incentivized efforts of Plaintiff. In January 2021, Plaintiff met with Defendant Bhanti after it was clear that she met the billing requirements for her raise. Defendant Bhanti confirmed that he planned to give her the increased salary, but needed additional time to pay her.

From the end of February 2021 to June 2021, Plaintiff took paid maternity leave. Upon her return, she inquired about the status of her promised pay increase and unpaid wages. Defendant Bhanti assured her that he would pay her. The next month, Plaintiff again inquired about her pay raise. Defendant Bhanti informed her that he used the funds for her increase to hire a personal assistant instead, but still planned to pay her as promised.

In early September 2021, Plaintiff became aware of Medicare/Medicaid and Missouri HealthNet Billing Guidelines and realized Defendants' policy of "trial deliveries" were in violation of those guidelines. For trial deliveries, Defendant Ortheco would provide a prosthetic to a customer prior to the delivery or date of treatment identified in the medical records or prescriptions for the purpose of billing Missouri Healthnet and insurance companies. Plaintiff believed falsifying the delivery date of medical devices to manipulate the payment of claims submitted through Missouri HealthNet for Medicare/Medicaid eligible customers of Defendant Ortheco was unlawful. Plaintiff believed if Defendants properly documented the trial deliveries as they really occurred, it would not be reimbursed. Plaintiff contacted a coworker to relay her belief that Defendants should stop these trial delivery practices. Despite her concerns, Defendant Ortheco made a trial delivery on September 10, 2021, which was billed to Missouri HealthNet

with the same manipulation as described above. Shortly after this, Plaintiff contacted the Missouri Attorney General's Office, among other governmental offices, to report these concerns about Defendants' trial delivery policies and practices.

On September 21, 2021, Plaintiff met with Defendant Bhanti to inquire about the recent trial deliveries and her concerns about it being unlawful. Defendant Bhanti became visibly upset and raised his voice at her for voicing this opinion. The next day, Plaintiff met with Defendant Bhanti and a coworker to discuss her backpay and wage rate. Defendant Bhanti told her that she should be looking for a new job based on these concerns related to her wages and hours.

On September 30, 2021, Plaintiff again asked Defendant Bhanti about the status of her back pay at the contract wage rate. Defendant Bhanti replied that her back wages at the agreed upon rate would be paid on her final paycheck. Plaintiff told Defendant Bhanti that she was not intending to quit. Defendant Bhanti expressly stated that because Plaintiff believed Defendants' trial delivery policies were unlawful, he did not see her as someone he could build his company with. Defendant Bhanti said she should be looking for a new job.

On October 6, 2021, a patient came in for final delivery of a prosthetic. During the processing of the transaction, Defendant Bhanti inquired whether Plaintiff really believed Defendants' trial delivery practices were fraudulent and challenged her to report them if so. After confirming that she believed such practices were unlawful and that she already reported the conduct to the Missouri Attorney General's Office, Defendant Bhanti then terminated her employment stating, "You need to leave. You need to go home now."

On October 15, 2021, Plaintiff received her last paycheck, which did not include the promised back wages at the correct rate. On October 26, 2021, Plaintiff texted Defendant Bhanti, requesting her final wages. Defendant Bhanti replied:

4

> Good Morning Stephanie. You know I did not have the money to pay you in January. I had to take 40k from Dr. Kukkar to pay Ossur. I still gave you bonus because you were having a baby and because you worked on getting us paid for the hand. I did the best I could under the circumstances. I know you care about my company. I don't want to fight this and I don't want any bad feelings. There's a new girl starting today. I want you to spend five days with her showing her all that is needed. I can give you $3000 in severance at the end of it and 100 dollars for each day of work totaling 3500. That will help me get her going with a head start and we can part ways amicably.

Plaintiff immediately rejected Defendant Bhanti's offer. In November 2021, Plaintiff sent a second written request for her final payment of wages, which was later returned to her as "undeliverable." Shortly after, Plaintiff received a box from Defendants containing a variety of her personal items left at the office.

Plaintiff's First Amended Complaint alleges the following eight counts: Unpaid wages under MMWL (Count I); Breach of Contract (Count II); Quasi-Contract (Count III); Failure to Timely Remit Earned Wages at Termination (Count IV); Wrongful Termination in Violation of the Whistleblower Protection Act (Count V); Wrongful Termination in Violation of Missouri's Health Care Fraud Whistleblower Protection Act (Count VI); Unpaid Wages in Violation of FSLA (Count VII); and, Retaliation in Violation of FSLA (Count VIII). Plaintiff seeks, *inter alia*, judgment in her favor, compensatory damages and attorney's fees and costs.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants

5

the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

### Discussion

<u>Unpaid Wages under MMWL (Count I) and FSLA (Count VII)</u>

The FLSA requires employers to pay a minimum hourly wage, 29 U.S.C. § 206(a)(1),

6

and to compensate non-exempt employees at overtime rates for time worked in excess of forty hours per workweek. *Id.* § 207(a)(1). The MMWL is interpreted in accordance with the FLSA, and the regulations promulgated thereunder; the following discussion applies fully to both the FLSA and MMWL claims. Mo. Rev. Stat. § 290.505(4); *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 757 n.3 (Mo. banc 2014).

Defendants argue that Plaintiff failed to state claims for her unpaid wages because she never alleges that she worked more than forty hours in a workweek.[2] Plaintiff is not alleging Defendants failed to pay her minimum wage.

In her First Amended Complaint, Plaintiff alleges that she was scheduled to work approximately 42.5 hours per week, specifically 8:30 A.M. to 5:00 P.M., Monday through Friday and was never written up for being tardy or absent. *See* ECF No. 11 at ¶¶ 15-16, 51. Plaintiff alleges that she commonly worked through her meal breaks and routinely worked at least an additional two hours beyond forty hours per week without being paid the required overtime rate. *Id.* ¶¶ 53, 62-63. Presuming that these facts are true and granting reasonable inferences in her favor, the Court finds Plaintiff sufficiently alleged that she worked more than forty hours in a workweek and did not receive the overtime rates for time she worked in excess of forty hours, as required under the MMWL and the FSLA.

Although there is a lack of clarity to exactly what Plaintiff is alleging in these counts as a salaried employee, the Court cannot simply dismiss Plaintiff's claims because Plaintiff may be unable to ultimately prove her allegations. At this early stage of litigation, the Court looks solely

---

[2] Defendants also attack the calculation of damages and amount of declaratory relief that Plaintiff seeks, arguing she is requesting payment at a higher contractual rate than she was actually being paid. Defendant's argument is premature at this early stage of the case and is not relevant to the question of whether her First Amended Complaint sufficiently states a claim.

7

at the allegations contained in the Complaint to determine whether, assuming the truth of the facts alleged, Plaintiff states a claim. Counts One and Seven satisfy this standard.

Breach of Contract (Count II)

To state a claim for breach of contract under Missouri law, a party must allege "(1) the making and existence of a valid and enforceable contract, (2) the right of the plaintiff and the obligation of the defendant thereunder, (3) a violation thereof by the defendant, and (4) damages resulting to the plaintiff from the breach." *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 823 (E.D. Mo. 2013) (citing *Gilomen v. Sw. Mo. Truck Ctr., Inc.*, 737 S.W.2d 499, 500–01 (Mo. Ct. App. 1987)). A party "fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract." *Trotter's Corp. v. Ringleader Restaurants, Inc.,* 929 S.W.2d 935, 941 (Mo. App. E.D. 1996).

Defendants argue that Plaintiff's breach of contract claim fails to allege offer, acceptance, and bargained for consideration, the essential elements of a contract. The Court disagrees. In her First Amended Complaint, Plaintiff has alleged that Defendants entered into a binding and enforceable agreement with her (ECF No. 11 at ¶¶ 76, 78); Defendants offered to raise her yearly salary if she worked beyond the terms of her employment to contribute to increase the allowable billings to $60,000 for three consecutive months (*Id.* at ¶¶ 75-77); Plaintiff relied on Defendants' promise, working above and beyond her normal job duties and did not seek out other more lucrative job opportunities (*Id.* at ¶¶ 19, 77); the allowable billings were in access of $60,000 in November 2020, December 2020 and January 2021, and Defendants accepted her performance in February 2021 (*Id.* at ¶¶ 24, 80-81); Defendants failed to pay her the yearly salary agreed upon (*Id.* at ¶¶ 82, 84); and Plaintiff has been damaged by not receiving the agreed upon salary (*Id.* at ¶¶ 19, 77).

Plaintiff has satisfied the elements for a cause of action for breach of contract under Missouri law in order to survive this stage of the proceedings. *See, e.g., BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 689 (8th Cir. 2003) ("The allegations that BJC had a binding agreement with Columbia, that Columbia breached the agreement, and that BJC suffered injury as a result of the breach, are sufficient to satisfy the requirements of Rule 8(a).").

Quasi-Contract (Count III)

Defendants contend that Plaintiff's claim for quasi-contract must be dismissed because Plaintiff cannot obtain equitable relief when she admittedly entered into an express contract. Plaintiff responded that she has pleaded alternative theories of recovery, which is explicitly allowable under Federal Rule of Civil Procedure 8(d)(2).

Federal Rule of Civil Procedure 8 states that:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds…

Fed. R. Civ. P. 8(d)(2).

Pursuant to Rule 8(d)(2), Plaintiff may set forth inconsistent claims in her First Amended Complaint. *See Superior Edge, Inc. v. Monsanto Co.,* 44 F.Supp.3d 890, 900 (D.Minn. Sept. 8, 2014) (citations omitted) ("In reliance upon the Rule 8, federal courts in Missouri have consistently denied motions to dismiss quasi-contract claims even where the pleading also alleges the existence of an express contract."); *Sargent v. Justin Time Transp., L.L.C.*, 2009 WL 4559222, at *2 (E.D.Mo. Nov. 30, 2009) ("Pleading in the alternative is clearly allowed under Federal Rule of Civil Procedure 8(e)."). "Because a party may set forth two or more claims

alternatively when it does not know upon which precise theory the evidence may entitle recovery, it is settled law that joining a count based on an expressed contract with a count based on quantum meruit does not create an inconsistency." *Guarantee Elec. Constr. Co. v. LVC Tech., Inc.,* 2006 WL 950204, at *2 (E.D.Mo. April 10, 2006). Thus, the Court will allow Plaintiff's alternative pleading.

Despite Defendants' contention, Plaintiff has also stated a claim under her equitable theory that is plausible on its face. "The essential elements of a quasi-contract or quantum meruit claim are that the plaintiff provided to the defendant…services at the defendant's request or with the acquiescence of the defendant, that the…services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such…services." *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 206 (Mo. App. W.D. 2006). "The principal function of this type of implied contract is the prevention of unjust enrichment, and a claim for quantum meruit does not require the existence of an express agreement between the parties*." Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 711 (Mo. App. E.D. 2002).

Here, Plaintiff's First Amended Complaint claims that she provided services to Defendants that had reasonable value, *i.e.,* working beyond her duties to make more money for the business, and Defendants failed to pay her for those services after several requests to do so by Plaintiff. Thus, the Court finds that Plaintiff has stated a sufficient claim for recovery under the theory of quasi-contract. *Guarantee Elec.*, 2006 WL 950204 at *2.

<u>Failure to Timely Remit Earned Wages at Termination (Count IV)</u>

Defendant argues Count IV should be dismissed because Plaintiff claims an entitlement to wages under a February 1, 2019 contract, despite not being employed by the Defendants at

10

that time and failing to describe the terms of that contract. Plaintiff explains in her response the reference to a February 1, 2019 contract was typographical error, and the date should be February 1, 2021. Although this mistake will need to be cured in later proceedings, the Court can reasonably infer from the First Amended Complaint, for purposes of this motion only, that the intended date alleged by Plaintiff for unpaid wages is February 2021.

Defendants also argue it is unclear what amount Plaintiff is attempting to recover in her prayer for relief. The amount of damages to be recovered is based upon the proof, not the pleadings.[3] *See* Fed. R. Civ. P. 54(c). Although the Court agrees this claim lacks clarity as to the requested recovered amount, that is not relevant when analyzing if Count IV sufficiently states a claim or not. *See Doores v. Intercontinental Engineering-Manufacturing Corp.* 670 S.W.2d 65, 68 (Mo. App. W.D. 1984) (noting that statute requiring an employer to pay a terminated employee unpaid wages within seven days after written request of the employee or face a penalty does not require any minimum amount of unpaid wages to trigger the penalty). Defendants' request to dismiss this count will be denied.

<u>Wrongful Termination in Violation of the Missouri Whistleblower Protection Act (MWPA) (Count V)</u>

Defendants request Count V be dismissed because Plaintiff fails to state a claim that Defendants are covered employers under the MWPA.

The MWPA defines "employer" as:

> "Employer," an entity that has six or more employees for each working day in each of twenty or more calendar weeks *in the current or preceding calendar year*. "Employer" shall not include the state of Missouri or its agencies, instrumentalities, or political subdivisions, including but not limited to any public institution of higher education, a corporation wholly owned by the state of Missouri, *an individual employed by an*

---

[3] Defendants' other attacks on Plaintiff's prayer for relief will not be addressed by the Court in this Order because it is not relevant at this early stage of the case or for purposes of determining the merits of a Rule 12(b)(6) motion.

*employer*, or corporations and associations owned or operated by religious or sectarian organizations[.]

Mo. Rev. Stat. § 285.575.2(2) (emphasis added).

Defendants argue that Defendant Bhanti as an individual is not a covered employer under the MWPA and because Plaintiff fails to clarify that this Count is only brought against Defendant Ortheco, it should be dismissed. First, it is clear by the repeated use of "Defendants" in Count V, that this count intends to be alleged against both Defendant Bhanti and Defendant Ortheco. Second, the MWPA does not preclude *all* individuals as covered employers, just individuals who are "employed by an employer." No such allegation against Defendant Bhanti has been made to fit this preclusion. Plaintiff's First Amended Complaint alleges that Defendants Bhanti and Ortheco "together operate as Ortheco Prosthetics," and Defendant Bhanti is "the organizer and sole member of Ortheco LLC and held himself out to Dopplick as the owner/operator of Ortheco Prosthetics." *See* ECF No. 11 at ¶¶ 5-6.

Defendants next argue Plaintiff fails to state a claim because "in order to state a claim under the MWPA, Plaintiff must allege that Defendant Ortheco LLC employed six or more employees for twenty or more calendar weeks in the current year or the year preceding the claim." Defendants' argument is limited to this single sentence, without any explanation or citation to any caselaw. Plaintiff First Amended Complaint specifically alleges, "Defendant Ortheco LLC is an employer under Section 285.575.2(2), RSMo in that it had six or more employees for each working day in each of twenty or more calendar weeks during the relevant time period." ¶ 107. The Court can reasonably infer that "the relevant time period" satisfies the required timeframe under the statute.  The Court finds that Count V of Plaintiff's First Amended Complaint sufficiently states a claim that Defendants are covered employers under the MWPA.

12

<u>Wrongful Termination in violation of the Missouri Health Care Fraud Whistleblower Protection Act (Count VI)</u>

The Missouri Health Care Fraud Whistleblower Protection Act states,

> An employer shall not discharge, demote, suspend, threaten, harass, or otherwise discriminate against an employee in the terms and conditions of employment because the employee initiates, assists in, or participates in a proceeding or court action under sections 191.900 to 191.910.

Mo. Rev. Stat. § 191.908.1.

Missouri law dictates that "no health care provider shall knowingly make or cause to be made a false statement or false representation of a material fact in order to receive a health care payment." *Id.* § 191.905.1. The attorney general is given authority to investigation alleged or suspected violations under this statue. *Id.* § 191.910.1.

Defendants maintains that Count VI should be dismissed because Plaintiff has failed to allege that she participated in a proceeding or court action as required by statute. Defendants again cite to no authority to support this argument, other than citing to a case that finds the Court must give effect to a statute's plain meaning when it is unambiguous.

Plaintiff's First Amended Complaint states that Defendants manipulated the date of service for its prosthesis for the purpose of obtaining reimbursement outside of the customer's eligibility to receive reimbursement, and that she believed such practices were the submission of false claims. *See* ECF No. 11 at ¶ 123. It further alleges that, she "engaged in protected activity under Section 191.908.1, RSMo in that she initiated, assisted in, or participated in proceedings under Sections 191.900 to 191.910, RSMo as detailed above; specifically reporting and commencing administrative actions (i.e., investigations into a complaint) which Dopplick reported to the Missouri Attorney General's MoHealthNet Fraud and Abuse hotline, the Office of Inspector General for U.S. Department of Health and Human Services, the American Board

13

for Certification of Orthotics, Prosthetics, and Pedorthics, and the Illinois Attorney General." *Id.* at ¶ 125. Plaintiff argues in her response that because she alleged that she reported facts believed to be health care fraud taken by Defendants to the Missouri Attorney General hotline, she initiated or assisted an investigation into the suspected violation. Looking solely at the allegations contained in the First Amended Complaint, assuming the truth of the facts alleged, Plaintiff sufficiently states a claim in Count VI.

   Retaliation in Violation of FSLA (Count VIII)

   Lastly,[4] Defendants contend Count VIII should be dismissed because the First Amended Complaint does not directly address whether Plaintiff was asserting a legal right to overtime pay versus an alleged contractual right to a higher salary. Defendants argue that because she did not file an oral or written complaint as required under the FLSA in order to be a covered or protected person for purposes of bringing a retaliation claim, they cannot retaliate against a right that Plaintiff failed to assert. These arguments are not well taken.

   The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation, a plaintiff must show that he participated in statutorily protected activity, that appellees took an adverse employment action

---

[4] Defendants alternatively request the Court require Plaintiff to make more definite statements for defects in Counts I-IV. The Court finds that the First Amended Complaint is sufficiently clear on its intent. Defendants will have an opportunity to request any issues to resolved in later proceedings.

14

against her, and that there was a causal connection between them.  *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034–35 (8th Cir. 2005).

For enforcement of its wage, hour, and overtime standards, the FLSA relies on "information and complaints received from employees seeking to vindicate rights claimed to have been denied." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).  The anti-retaliation provision is integral to the enforcement because it prevents fear of economic retaliation from inducing workers quietly to accept substandard conditions.  *Id.*

To further the goals of the FLSA, courts have extended application of the anti-retaliation provision to conduct not expressly covered in the FLSA.  *Saffels v. Rice*, 40 F.3d 1546, 1548 (8th Cir. 1994).   In applying the FLSA's anti-retaliation provision to activity that falls outside the express wording of the statute, courts look to its "animating spirit."  *Id.* at 1549 (internal quotations and citations excluded).  For example, "[c]ourts have [ ] not hesitated to apply the protection of section 15(a)(3) to activities less directly connected to formal proceedings where retaliatory conduct has a [ ] chilling effect on employees' assertion of rights." *Id.* at 1548.

The FLSA also seeks to establish an enforcement system that is fair to employers.  *Kasten*, 563 U.S. at 13.  As such, employers are entitled to fair notice.  *Id.* at 14.  The "filed any complaint" language of the anti-retaliation provision "contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id*.  Put another way, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both

15

content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

In her First Amended Complaint, Plaintiff specifically states that she:

…engaged in protected activity under Section 215(A)(3) when asserting her rights under the FLSA and Missouri statutory law *to her unpaid earned wages*, the failure to make and maintain accurate records of her time and pay and conditions and practices of employment under the recordkeeping provisions of the Act and Missouri state law, and failure to timely pay all wages earned for all hours worked including straight time wages paid and owed, wage rate and salary basis of her pay, pay policies and practices and effective dates and conditions, reductions of such rates, *unpaid overtime premiums under Federal and Missouri state law.*

ECF No. 11 at ¶ 154 (emphasis added).

Plaintiff's First Amended Complaint further alleges the following:

[After her] protestations of Defendants pay policies and practices withholding earned wages, salary basis of payment, recordkeeping failures, failing to pay her all wages owed for all hours worked at a regular rate equal to her contracted rate of pay as unfair and unlawful, Defendant Bhanti and Defendant Ortheco expressly identified her request for untimely paid and unpaid wages at the agreed upon wage rate in threatening Dopplick's continued employment before terminating her employment and interfering in her subsequent efforts to mitigate her damages and seek subsequent employment by failing or refusing to respond to her or her prospective employers requests to verify her employment history, effectively blacklisting her and interfering with her ability to obtain subsequent gainful employment during inquiries into her prior employment history by prospective employers.

As a direct and proximate result of the retaliatory termination, Dopplick experienced a period of unemployment and has since been underemployed with the derailment of her career path and opportunities for advancement, earning less wages than she would have earned if not for the unlawful retaliatory and discriminatory actions of Defendants.

*Id.* at ¶ 156-157.

Based on the facts alleged, Defendants had notice and understanding of Plaintiff's complaint and assertion of her rights to overtime pay, among other issues with her pay and employment. The First Amended Complaint further satisfies the remaining elements that an adverse employment action was taken against her when she was terminated, and that there was a

16

causal connection between the termination and her complaint of lack of pay as legally required. Defendants' Motion to Dismiss Count VIII of the First Amended Complaint will be denied.

## Conclusion

For the reasons set forth above, the Court will deny Defendants' Motion to Dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [ECF No. 14] is **DENIED**.

Dated this 20th day of September, 2023.

*[signature]*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**